## Mary Rose Viveiros's Case.

No. 99-P-1939.

Suffolk. September 20, 2001. - November 28, 2001.

Present: Smith, Dreben, & Kantrowitz, JJ.

*Workers' Compensation Act,* Impartial medical examiner. *Evidence,* Medical report, Videotape.

At a workers' compensation benefits hearing, the judge did not err in not ordering sua sponte the admission of further medical evidence to supplement the report of the impartial medical examiner, because the burden was on the employee to move for such an expansion of the medical record. [298-300]

At a workers' compensation benefits hearing, the judge did not err in admitting a videotape of the employee's working conditions, where the videotape was relevant to the issue of the physical tasks required in the employee's job, and where the employee did not allege that the tasks shown in the videotape were not accurately portrayed; the employee's objection that she worked at a faster rate than depicted went to the weight of the evidence, not its admissibility. [300-301]

Appeal from a decision of the Industrial Accident Reviewing Board.

*Goncalo M. Rego* for the employee.

*Paul M. Moretti* for the insurer.

Kantrowitz, J. The main issue to be explored in this worker's compensation case centers on the employee's claim that there were shortcomings in the report of an independent medical examiner (IME) prepared pursuant to G. L. c. 152, § 11A. We hold that the burden was upon the employee, not the administrative judge sua sponte, to move to supplement the medical record.

*Background.* The employee, Mary Rose Viveiros, appeals from a decision of the reviewing board of the Department of

Industrial Accidents, which affirmed the decision of an administrative judge denying additional benefits from February 8, 1996, forward. She argues that (1) the report of the IME was inadequate to support the decision, and (2) a videotape purporting to depict her working conditions was improperly admitted in evidence. We affirm.

*Facts.* Viveiros is a former employee of A & A Manufacturing Co., Inc., where she worked as a garment examiner. As an examiner, she inspected the work of fourteen machine operators who installed pockets and zippers on garments. On October 16, 1995, she injured her lower back when she bent down to pick up a bundle of fabric. After reporting the incident to her supervisor, she left work to seek medical treatment at a local hospital, where she was given medication and released. She returned to work the next day and was assigned to a lighter job, which she left after two hours, still complaining of pain. She again reported this to her supervisor and sought medical treatment. She has not returned to work since.

The insurer, A.I.M. Mutual Insurance Company, denied initial liability and payment of benefits. Viveiros filed a claim for benefits pursuant to G. L. c. 152, §§ 13, 30, and 34. On February 28, 1996, following a conference held pursuant to G. L. c. 152, § 10A, the administrative judge ordered the payment of medical and temporary total incapacity benefits pursuant to G. L. c. 152, §§ 30 and 34, for the period of October 17, 1995, to February 8, 1996.[1] While both parties appealed that decision, the insurer withdrew its appeal on March 15, 1996.

Pursuant to G. L. c. 152, § 11A(2), Dr. Medhat Kader was named as an IME[2] to examine Viveiros, which he did on May 1, 1996. Dr. Kader reviewed the reports of Viveiros's previous

---

[1]February 8, 1996, is the date of the examination and medical report of Dr. Shapiro, the insurer's physician, stating that Viveiros, in his opinion, had reached a medical end result and could return to her usual occupation.

[2]"When any claim or complaint involving a dispute over medical issues is the subject of an appeal of a conference order pursuant to section ten A, the parties shall agree upon an impartial medical examiner from the roster to examine the employee and submit such choice to the administrative judge assigned to the case within ten calendar days of filing the appeal, or said administrative judge shall appoint such examiner from the roster." G. L. c. 152, § 11A(2), as appearing in St. 1991, c. 398, § 30.

treating physicians.[3] He found a causal relationship between the incident and the back pain, but concluded that at the time of his examination, Viveiros was not disabled and was capable of performing her previous job. His diagnosis at the time of the examination was a "low back sprain, completely subsided with no residuals."

Viveiros argues on appeal that the report of the IME was inadequate in that it "failed to address the disability and extent of it for the period prior to the date of the examination."

*Supplementation of the medical record.* Issues of fault are largely irrelevant in cases in which an employee is injured in the workplace. Of significance and in frequent dispute are "the fact and the extent of injury." *O'Brien's Case*, 424 Mass. 16, 20 (1996). To avoid what had been categorized as the battle of dueling doctors, G. L. c. 152 was amended to provide for an examination by an agreed upon or appointed impartial medical examiner. After the physical examination, the doctor is required to render a report, which must address certain issues.[4] That report is entered as an exhibit. "[N]o additional medical reports

---

[3]The medical records Dr. Kader reviewed and incorporated in his report included the following reports: (1) Dr. Christiansen, of WorkMed Occupational Health Service, who, on October 17, 1995, diagnosed Ms. Viveiros as having "lumbar strain" and authorized her return to work with medication and physical therapy; (2) Dr. Maurice A. Berard, of the Back Clinic at Charlton Memorial Hospital, who treated Viveiros on October 19, 1995, and reviewed an x-ray dated October 16, 1995, which revealed negative findings in the lumbosacral spine; (3) Dr. Jeffrey Swift, a chiropractor, who diagnosed "a very mild lumbar sprain" on October 19, 1995, and gave her chiropractic treatments until January 1, 1996, at which time he noted her motion to be "essentially normal" and intended to discharge her after her examination in one month; and (4) Dr. Shapiro, the insurer's physician, whose February 8, 1996, examination of Viveiros "revealed essentially negative findings," and who determined at that examination that she was at an end result and was "able to return to her usual occupation."

[4]"The report of the impartial medical examiner shall, where feasible, contain a determination of the following: (i) whether or not a disability exists, (ii) whether or not any such disability is total or partial and permanent or temporary in nature, and (iii) whether or not within a reasonable degree of medical certainty any such disability has as its major or predominant contributing cause a personal injury arising out of and in the course of the employee's employment. Such report shall also indicate the examiner's opinion as to whether or not a medical end result has been reached and what permanent impairments or losses of function have been discovered, if any. Such impartial physician's report shall constitute prima facie evidence of the matters

or depositions of any physicians shall be allowed by right to any party; provided, however, that the administrative judge may, on his own initiative or upon a motion by a party, authorize the submission of additional medical testimony when such judge finds that said testimony is required due to the complexity of the medical issues involved or the inadequacy of the report submitted by the impartial medical examiner." G. L. c. 152, § 11A(2), as appearing in St. 1991, c. 398, § 30.

Coupled with these principles is the long held rule that the employee has the burden of proving the essential facts necessary to establish a case warranting the payment of compensation. See *Sponatski's Case*, 220 Mass. 526, 527-528 (1915); *Patterson v. Liberty Mut. Ins. Co.*, 48 Mass. App. Ct. 586, 592 (2000); G. L. c. 152 § 8(1), as appearing in St. 1991, c. 398, § 23 ("an insurer's inability to defend on any issue shall not relieve an employee of the burden of proving each element of any case").

In this case, Dr. Kader concluded that on May 1, 1996, the date he examined Viveiros, she had reached a medical end result. While he opined that she had reached that point on the date he examined her, he did not offer an opinion as to when, prior to that date, she might have reached that point.[5] As the report was silent on the extent of the disability, if any, between February 8, 1996, and the date of the medical examination on May 1, 1996, which was the period for which Viveiros was seeking additional benefits, the question arose as to who had the responsibility to address this alleged shortcoming. Viveiros argues that it was incumbent upon the administrative judge to order sua sponte additional medical evidence.[6] Given the traditional roles of the parties, however, it was Viveiros, not the

---

contained therein." G. L. c. 152, § 11A(2), as appearing in St. 1991, c. 398, § 30.

[5]At his deposition on November 26, 1996, the doctor was never specifically asked by either party about his opinion as to when Viveiros had reached an end result. He was questioned as to whether his opinion was limited to the date of the examination, to which he replied, "That's what we do to evaluate people, examine them, listen to them, and we cannot watch them for a year and a half to see whether they have back pain or not. My job is to examine her and see what she is now when I examine her."

[6]*Wilkinson's Case*, 11 Mass. Workers' Comp. Rep. 263, 265 (1997), and *Allie's Case*, 12 Mass. Workers' Comp. Rep. 167, 170 (1998), discuss two

administrative judge, who had the burden of moving to expand the medical record.

Section 11A(2) provides that an administrative judge *may*, on the judge's own initiative or upon a motion by either party, enter in evidence additional medical testimony when the judge finds such evidence necessary due to the inadequacy of the report submitted by the IME. A plain reading of the statute indicates that the judge's actions are discretionary. *O'Brien's Case*, 424 Mass. at 18.

At the hearing, Viveiros did not move to present further medical evidence and chose to rely on the report of the IME.[7] As the request was never made, it was not incumbent upon the administrative judge to order it sua sponte. The administrative judge's finding that Viveiros failed to sustain the burden of proof necessary to support an award of further benefits was adequately supported by the record and was not in error.

*Admission of the videotape.* Viveiros also argues that the videotape that the insurer introduced at the hearing did not provide a fair representation of her working conditions and was therefore inadmissible. She testified to working at a faster rate

---

instances, which are not applicable here, where an administrative judge should have acted sua sponte. In *Wilkinson's Case, supra* at 264, the IME made no objective findings attributing the employee's incapacity to the industrial injury; believing the claim meritorious, the administrative judge concluded on his own that there was a causal relationship. The reviewing board ruled that the judge had arbitrarily awarded benefits for an incapacity that had no support in the medical evidence, and held that, in this circumstance, the judge had the authority, which he should have exercised, to order sua sponte additional medical evidence. In *Allie's Case, supra* at 168-169, the IME made no finding of a causal relationship between the employee's carpal tunnel syndrome and her work, but the administrative judge, "[b]y reasonable inference" after reading the IME report, found a "clear causal relationship" and awarded benefits. Again, the reviewing board found that the administrative judge should have ordered additional medical testimony sua sponte, if there was no request for further medical testimony, and if the judge believed that the employee had a meritorious claim. These cases stand for the proposition that where the administrative judge is faced with an inadequate IME report and an employee's claim that the judge believes to be meritorious, the judge is empowered to authorize further medical evidence sua sponte, even though neither party has requested it, rather than rely on the judge's own lay medical opinion. These cases are distinguishable from the case at hand.

[7]We do not intimate an inadequacy on the part of counsel here. Indeed, a reading of the various doctors' reports indicates that there might not have been any beneficial evidence that could have been submitted.

than the workers shown on the videotape, thus, she asserts, making the videotape inaccurate.

"[V]ideotapes should be admissible as evidence if they are relevant, they provide a fair representation of that which they purport to depict, and they are not otherwise barred by an exclusionary rule." *Commonwealth* v. *Mahoney*, 400 Mass. 524, 527 (1987). It was within the judge's discretion to admit the videotape. See *Commonwealth* v. *Tobin*, 392 Mass. 604, 613 (1984), citing *Commonwealth* v. *Booker*, 386 Mass. 466, 469-470 (1982).

In the present case, the videotape was relevant to the material issue of the physical tasks that Viveiros's job required. She did not argue that the physical tasks shown in the videotape were not accurately portrayed. Her concern, centering on her work pace being faster than that depicted in the videotape, went to the weight of the evidence, not its admissibility. The administrative judge's admission of the videotape depicting Viveiros's working conditions was not error.

> *Decision of the Industrial Accident Reviewing Board affirmed.*