# Wayne R. Moss's (dependent's) Case.

Suffolk. March 6, 2008. - June 30, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Workers' Compensation Act,* Claim, Prima facie evidence, Serious and wilful misconduct of employer, Double compensation. *Evidence,* Administrative proceeding.

This court concluded that G. L. c. 152, § 7A, which establishes prima facie evidence of various elements of a workers' compensation claim when an employee has been rendered unable to testify by reason of injury or death occurring at the workplace, does not establish every fact necessary to establish entitlement to compensation under every section of G. L. c. 152 that deals with compensation, including the double compensation provided under G. L. c. 152, § 28, for injury resulting from the serious and wilful misconduct of an employer or supervisor. [706-711]

The reviewing board of the Department of Industrial Accidents properly denied the claimant's request for double workers' compensation benefits pursuant to G. L. c. 152, § 28, for the death of the employee resulting from the serious and wilful misconduct of the employer, where the evidence at the hearing before an administrative judge was sufficient to support the findings that the latch on the door of the vehicle in which the employee was riding was fastened at the time of the accident and that the door did not open during the accident as a result of any problem with the latch; that the claimant had failed to establish that either the driver of the vehicle or the owner of the company knew or had reason to know of facts which would lead a reasonable man to realize that his conduct not only created an unreasonable risk of bodily harm to another but also involved a high degree of probability that substantial harm would result to the claimant; and that the driver was not entrusted with or exercising powers of superintendence. [711-714]

At an administrative hearing, the administrative judge properly exercised her discretion with regard to evidentiary rulings, and any error in those rulings was harmless. [714-715]

Appeal from a decision of the Industrial Accident Reviewing Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Brian J. Sullivan* for the claimant.

*Daniel S. Hendrie* for the employer.

*Edward Gainor* for the insurer.

*Paul F. Leavis, Adam J. Troupe, & J. Michael Conley,* for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

BOTSFORD, J. If an employee cannot testify in his or her own behalf in seeking workers' compensation benefits, how can the claim be proved? One answer to this question can be found in G. L. c. 152, § 7A (§ 7A), which establishes prima facie evidence of various elements of a workers' compensation claim when an employee has been rendered unable to testify by reason of injury or death occurring at the workplace. In this case, we examine the interaction between § 7A and G. L. c. 152, § 28 (§ 28), which provides for double compensation when an employee's injury results from the "serious and wilful misconduct" of an employer or supervisor. We agree with the conclusion of the administrative judge of the Department of Industrial Accidents (department) that § 7A does not establish prima facie evidence of a violation of § 28. Based on that conclusion and on our review of the evidence presented at the hearing before the administrative judge, we affirm the decision of the department's reviewing board (board) upholding her denial of the § 28 double compensation claim at issue in this case.[1]

1. *Background.* Wayne Moss (employee) was killed in a motor vehicle accident on March 26, 1999, while traveling from one job site to another in connection with his duties as an employee of M&M Movers (company). The employee was seated on the far right passenger side of the bench seat of a 1987 Ford F700 straight truck (Ford) owned by his employer. The driver, Ronald Clement, and the middle passenger, Paul Avila, were also employees of the company. Three other employees, Kenneth Robitaille, Albert Crapeau, and Tony DeJesus, were following the Ford in a separate vehicle.

The Ford was traveling in the left-hand, or inner, lane of a two-way road in Rhode Island when it was struck in the middle of its left side by a van pulling out of a driveway on the opposite side of the road. The front of the van went under the box of the Ford, causing the Ford to fall over onto its right side; the

---

[1] We acknowledge the amicus brief filed by the Massachusetts Academy of Trial Attorneys in support of the plaintiff.

Ford slid along the road on its side for some distance before coming to a stop. When the Ford tipped over, the driver, Clement, held onto the steering wheel to avoid moving to the right, and he grabbed onto Avila, the middle passenger, whose arm was rubbing on the pavement through the open passenger door window. The employee, Moss, was ejected from the vehicle and trapped beneath it as it slid on its side; he died at the accident scene.

Following the accident, the employee's widow, Arlene Moss (claimant), applied for and has been collecting dependent death benefits under G. L. c. 152, § 31; this appeal relates to her claim for double compensation under § 28.[2] The claimant contended that the latch mechanism on the Ford's passenger side door was not operating properly, causing the door to open during the accident and allowing Moss to fall out. She alleged that Clement, the driver, or David Mello, the owner of the company, knew or should have known of the problem with the latch and that their failure to repair it constituted "serious and wilful misconduct" within the meaning of § 28. The administrative judge found that the employee's death was not caused by employer misconduct. She also concluded that § 7A did not apply to establish prima facie evidence that the accident was caused by the serious and wilful misconduct of an employer or supervisor. The board summarily affirmed the administrative judge's decision. The claimant appealed, and we transferred the case here on our own motion.

2. *Applicability of § 7A to § 28.* As has been indicated, § 7A establishes prima facie evidence of aspects of a workers' compensation claim.[3] Invoking the substance of the board's decision in *Petit* v. *Westvaco Corp.*, 8 Mass. Workers' Comp. Rep. 228,

---

[2]General Laws c. 152, § 28 (§ 28), provides in relevant part as follows:

"If the employee is injured by reason of the serious and wilful misconduct of an employer or of any person regularly intrusted with and exercising the powers of superintendence, the amounts of compensation hereinafter provided shall be doubled. . . ."

[3]General Laws c. 152, § 7A (§ 7A), provides:

"In any claim for compensation where the employee has been killed or found dead at his place of employment or, in the absence of death, is physically or mentally unable to testify, and such testimonial incapacity

231 (1994), in which the board concluded that § 7A creates prima facie evidence that where an employee dies on the job, the death was caused by the serious and wilful misconduct of the employer, the claimant contends that the administrative judge erred in failing to interpret § 7A to create prima facie evidence that this case falls within the provisions of § 28.[4] It is not entirely clear whether the board continues to adhere to the broad language of its *Petit* decision, in light of the fact that in the instant case, the board summarily affirmed the administrative judge's decision without registering any disagreement with her conclusion that § 7A did not apply to § 28. Nevertheless, we address the line of board decisions of which *Petit* is a part because those decisions may indeed continue to represent the board's interpretation of § 7A, and in any event, they form the basis for the claimant's argument. We begin, however, with a review of § 7A and this court's discussion of the section in *Anderson's Case*, 373 Mass. 813 (1977), because that case lies at the heart of the board's decisions.

Section 7A is designed "[t]o aid the victim[] of an unwitnessed accident" who is unable to testify and therefore has difficulty meeting the burden of proving entitlement to compensation under G. L. c. 152. L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation § 17.4 (3d ed. 2003). See *id.* at § 10.11. The section by its terms establishes prima facie evidence of four separate aspects of a workers' compensation claim:

> is causally related to the injury, it shall be prima facie evidence that the employee was performing his regular duties on the day of injury or death and that the claim comes within the provisions of this chapter, that sufficient notice of the injury has been given and that the injury or death was not occasioned by the willful intention of the employee to injure or kill himself or another."

[4]The claimant appears to assume that if § 7A is interpreted to establish prima facie evidence that the employee's death in this case was covered by § 28, she would have prevailed before the administrative judge and the board on her claim for double compensation. The correctness of this assumption is far from established by the administrative record: it is not clear what effect, if any, application of § 7A might have had on the ultimate findings and conclusions of the administrative judge. However, the question whether § 7A establishes prima facie evidence of serious and wilful misconduct on the part of an employer within the scope of § 28 has been fully briefed and argued, has arisen, and does arise in other cases, and we address it. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

(1) "that the employee was performing his regular duties on the day of injury or death"; (2) "that the claim comes within the provisions of [c. 152]"; (3) "that sufficient notice of the injury has been given"; and (4) "that the injury or death was not occasioned by the willful intention of the employee to injure or kill himself or another." G. L. c. 152, § 7A. In *Anderson's Case, supra*, this court held that particularly the second of these, "the claim comes within the provisions of [c. 152]," reflected a legislative intent that where an employee was found dead at his job, this fact should establish prima facie evidence that the employee's death was causally related to his employment. The court stated:

> "For a claim to be compensable it must arise out of and in the course of the employment. Clearly a causal relationship is required between the employment duties and the injury or death. In a case such as this one, where the employee was found dead at his place of employment, we construe the statute, § 7A, as establishing, inter alia, prima facie evidence of causal relationship between the employment and the injury or fatality. We believe that was the meaning intended by the Legislature, particularly in its use of the words, 'and that the claim comes within the provisions of this chapter.'"

*Anderson's Case*, 373 Mass. at 816-817.

In a number of decisions before this case, the board has relied on the quoted passage from *Anderson's Case, supra*, to interpret § 7A as establishing, whenever § 7A has been called into play by testimonial incapacity resulting from an employee's injury or death on the job, prima facie evidence of the specific requirements of the section of c. 152 under which the claim was brought. Thus, in *Zavalia v. Salem*, 6 Mass. Workers' Comp. Rep. 276 (1992), a case in which the compensation claim was brought under G. L. c. 152, §§ 36 and 36A,[5] and the employee had died following his injury, the board held that § 7A applied

---

[5]General Laws c. 152, §§ 36 and 36A, provide for extra compensation to be awarded where an employee's work-related injury has caused certain types of loss of function or brain damage, and the employee has not died within a specified period of time following the injury. At the time of the injury at issue in *Zavalia v. Salem*, 6 Mass. Workers' Comp. Rep. 276 (1992), § 36A required that the employee's death not be "instantaneous." *Id.* at 277 & nn.2 & 3.

to create prima facie evidence that the employee's death was other than instantaneous and that he had suffered a loss of function, two elements of a claim for recovery under §§ 36 and 36A. The board reasoned that the use of the term "inter alia" in *Anderson's Case*, 373 Mass. at 816, suggested that "§ 7A transcends the issue of causation" and that "[h]ad the Legislature intended to limit the application of § 7A to a single section of chapter 152 or to only one element of compensability it presumably would have accomplished that purpose by use of a reference more narrow than 'this chapter.' " *Zavalia* v. *Salem, supra* at 279. See *Hayes* v. *Commonwealth,* 7 Mass. Workers' Comp. Rep. 232, 235-236 (1993) (same). In *Petit* v. *Westvaco Corp.,* 8 Mass. Workers' Comp. Rep. 228, 231 (1994), the board relied on the *Zavalia* and *Hayes* cases to conclude that "§ 7A applies to all sections of chapter 152 pertaining to liability," including § 28: "the effect of § 7A . . . statutorily mandates the finding that § 28 applies to the injury . . . and that [the] injury was caused by the serious and willful [mis]conduct of the employer, unless the [employer or insurer] produces evidence sufficient to warrant a contrary conclusion which is found by the judge to rebut the prima facie evidence of serious and willful misconduct."

Although "[t]he interpretation of a statute by the agency charged with primary responsibility for administering it is entitled to substantial deference," *Gateley's Case,* 415 Mass. 397, 399 (1993), ultimately the "duty of statutory interpretation is for the courts." *Slater's Case,* 55 Mass. App. Ct. 326, 330 (2002), quoting *Police Comm'r of Boston* v. *Cecil,* 431 Mass. 410, 413 (2000). See *Walker's Case,* 443 Mass. 157, 160-170 (2004). In this case, we conclude that the board's interpretation of § 7A, as articulated in the *Zavalia, Hayes,* and *Petit* cases, is not supported by either the plain language of the statute or this court's decision in *Anderson's Case, supra.*

We interpret § 7A's establishment of prima facie evidence that a claim "comes within the provisions of" c. 152 as reflecting a legislative intent that employees who have been injured or killed while at work and who have thereby been rendered unable to testify should qualify for workers' compensation benefits unless persuasive contrary evidence indicates otherwise. That is, as suggested above, the section addresses a concern that victims

of unwitnessed accidents might be deprived of all compensation
under G. L. c. 152 because they are unable to meet their burden
of proof on the essential elements of a claim for compensation.
See L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compen-
sation, *supra* at § 10.11. The other facts established by § 7A
— "that the employee was performing his regular duties on the
day of injury or death . . . , that sufficient notice of the injury
has been given and that the injury or death was not occasioned
by the willful intention of the employee to injure or kill himself
or another" — support this interpretation, as they are either
necessary elements of an entitlement to basic compensation or
negations of an employer's potential affirmative defenses to
any liability under c. 152. See G. L. c. 152, § 26 (injury must
"aris[e] out of and in the course of . . . employment"); G. L.
c. 152, § 41 (requiring notice to employer or insurer "as soon
as practicable after the happening [of the accident]"). See also
G. L. c. 152, §§ 26A, 27 (limiting employer's liability in cases
of suicide or employee's wilful misconduct).

*Anderson's Case, supra*, is wholly consistent with this view.
As the previously quoted passage of the decision in that case in-
dicates, the court interpreted the portion of § 7A creating prima
facie evidence "that the claim comes within the provisions of
this chapter" to include the causal link between employment
and injury or death, because causation is a necessary element of
any claim for compensation under c. 152. *Anderson's Case*, 373
Mass. at 816-817.

We therefore disagree with the claimant's contention that
where it applies, § 7A establishes prima facie evidence not only
of the facts set out in that section, but also of every fact neces-
sary to establish entitlement to compensation under every sec-
tion of c. 152 that deals with compensation, including the double
compensation provided under § 28.[6] To the extent that the board
has held otherwise, its interpretation is inconsistent with the

---

[6]The plain language of § 7A cannot reasonably be stretched to accom-
modate the broad general reach that the board and the claimant in this case
have attributed to it. Focusing on § 28 in particular, this court has interpreted
the "serious and wilful misconduct" described in the section to require "much
more than mere negligence, or even than gross or culpable negligence. It
involves conduct of a quasi criminal nature, the intentional doing of something
either with the knowledge that it is likely to result in serious injury or with a

plain language of the statute and with appellate precedents.[7] The administrative judge appropriately evaluated the evidence in this case with an eye toward whether the claimant had met her burden of proving an entitlement to double compensation under § 28, without the benefit of any prima facie evidence from the operation of § 7A.

3. *Sufficiency of the evidence.* The claimant also complains that the board's affirmance of the administrative judge's decision was arbitrary or capricious because the record does not support the administrative judge's findings that the passenger door was securely latched and did not open; that the employee was ejected through the open window; that the driver, Clement, was not negligent; and that Clement was not a supervisor within the meaning of § 28.

In order to recover double compensation under § 28, the claimant had the burden of establishing by a preponderance of the evidence, *Sponatski's Case*, 220 Mass. 526, 527-528 (1915), that

wanton and reckless disregard of its probable consequences." *O'Leary's Case*, 367 Mass. 108, 115 (1975), quoting *Scaia's Case*, 320 Mass. 432, 433-434 (1946). It is exceedingly difficult to conclude that without any mention of § 28, and simply by inserting the phrase, "that the claim comes within the provisions of this chapter" in § 7A, the Legislature intended to establish, for every employee entitled to the benefit of § 7A, prima facie evidence that his or her employer is guilty of quasi criminal conduct.

[7]In addition to *Anderson's Case*, the board in both *Zavalia* v. *Salem*, 6 Mass. Workers' Comp. Rep. at 279, and *Petit* v. *Westvaco Corp.*, 8 Mass. Workers' Comp. Rep. 228, 231 & n.4 (1994), drew support for its expansive interpretation of § 7A from a footnote in *Thayer's Case*, 345 Mass. 36, 43 n.5 (1962). We think the board has misread the import of the footnote. *Thayer's Case, supra* at 41-43, (in relevant part) addressed the question whether an employee's claim for double compensation under § 28 was governed by the time limits set out in G. L. c. 152, § 41, for filing claims for "compensation"; it was agreed that claims for basic or "ordinary" compensation brought under c. 152, § 26, were subject to the § 41 limits. The court concluded that "compensation" as used in § 41 was used generically to apply to § 28 as well as § 26 proceedings. *Id.* at 42-43. Considered in this context, the court's reference to § 7A in the footnote is best understood as stating that in a case of an unexplained death or injury occurring at an employee's place of work, a claimant bringing a claim for double compensation under § 28, like a claimant filing under § 26, could seek the application of § 7A to his or her case. Contrary to the board's reading, however, the *Thayer's Case* footnote does not address what the application of § 7A would mean — that is, the footnote does not identify the particular issues arising in a § 28 claim on which § 7A establishes prima facie evidence.

(1) an employer or supervisor (2) committed serious and wilful misconduct that (3) caused the employee's injury. G. L. c. 152, § 28. We review the board's decision under G. L. c. 152, § 12 (2), in accordance with the standards expressed in G. L. c. 30A, § 14 (7) (*a*)-(*d*), (*f*), and (*g*), to determine whether the board properly affirmed the judge's findings. See *Scheffler's Case*, 419 Mass. 251, 257-258 & n.4 (1994). Thus, we consider "whether the decision is factually warranted and not '[a]rbitrary or capricious,' in the sense of having adequate evidentiary and factual support and disclosing reasoned decision making." *Id.* at 258. See *Robinson's Case*, 416 Mass. 454, 457 (1993) (standards identified in G. L. c. 152, § 12 [2], "may overlap with the substantial evidence standard"). Under this standard, we conclude that the board's decision was not arbitrary or capricious as there was sufficient evidence to support the administrative judge's decision that § 28 did not apply.

A variety of witnesses presented evidence at the hearing regarding the condition of the latch mechanism and whether the door opened during the accident. The driver, Clement, had given a statement to the Rhode Island State police on the day of the accident in which he described seeing the door open and the employee fall out. At the hearing before the administrative judge, however, Clement testified (on direct examination by the claimant's counsel) that he did not actually see the door come open but assumed it must have opened for the employee to have fallen out as he did.

Clement also testified that he had inspected the latch plate on the Ford's passenger door the night before the accident and noticed that, of the three screws that secured the plate to the door, one was missing, one was loose, and impliedly one was secure. He tightened the loose screw. The claimant's metallurgy expert, Marc Richman, testified that the latch would close even if there were only one or two screws in place and that, once closed, it would remain securely latched unless someone pulled on the handle, even if any remaining screws fell out during the accident.[8]

Clement told the police on the day of the accident that the employee told him the door was "a pain in the ass" but that

---

[8]A photograph of the latch plate taken at the accident scene shortly after the accident shows no screws in the plate.

"he got it closed. He said he was all set." Robitaille, the driver of the other company vehicle, testified that he closed the Ford's passenger door as the vehicle was leaving on the trip that ended in the accident; that although he had to slam it, the door latched securely; and that it had felt the same as when he closed an exemplar door at the hearing. The insurer's accident reconstruction expert, Gordon Johnson, testified that it was reasonable and common for an unrestrained passenger to be ejected through a vehicle window and that, given the lack of evidence of drag marks on the trailing edge of the door, and Clement's statement at the hearing that he did not see the door actually come open, the employee may have been ejected through the open window. He also testified that if the door did open, it was "reasonably probable" that the employee had opened it himself by grabbing the handle in an attempt to hold himself in place against the forces of inertia during the accident.[9]

Based on this evidence, the administrative judge found that the latch mechanism was not defective, that the door had remained closed during the accident, that the employee was ejected through the open window, and that employer misconduct was not the proximate cause of his death. While there certainly was some evidence to support the claimant's contention that the employee was ejected through the door as a result of a faulty latch mechanism, sufficient evidence existed to support the administrative judge's findings that the latch was securely fastened at the time of the accident and that the door did not open during the accident as a result of any problem with the latch.[10]

Moreover, the evidence at the hearing supported the judge's conclusion that the claimant had failed to establish that either Clement or Mello, the owner of the company, "kn[e]w or ha[d] reason to know of facts 'which would lead a reasonable man to realize that [his] conduct not only creates an unreasonable risk of bodily harm to [an]other but also involves a high degree of

---

[9]The claimant's counsel raised numerous objections to Johnson's testimony during the hearing. We address those objections in part 4, *infra*.

[10]In particular, Robitaille's testimony that he closed the passenger door for the last time just before the accident and that it latched securely, and the expert witness Richman's testimony that once the latch was engaged, it would not disengage unless someone pulled the handle, regardless of the number of screws in place, were together sufficient to support those findings.

probability that substantial harm will result to him.' "[11] *Scaia's Case*, 320 Mass. 432, 434 (1946), quoting Restatement of Torts § 500 comment a.

Finally, there was evidence to support the judge's finding that Clement was not "intrusted with" or "exercis[ing] powers of superintendence" within the meaning of § 28. The claimant bases her argument for supervisor status on the fact that Clement was the only employee in the Ford who possessed a commercial driver's license (CDL) and therefore was obliged to comply with certain regulatory safety provisions. However, Mello testified that all of the employees had equal responsibility with regard to job duties in general and safety in particular, and that although Clement was the designated driver, he was not a supervisor. Clement's status as a CDL licensee was not sufficient to bring him within the scope of § 28 as "a person who is officially designated by the employer as the person in charge of a particular facet of the employer's business." *O'Leary's Case*, 367 Mass. 108, 114 (1975).[12]

4. *Prehearing rulings and evidentiary rulings.* Finally, the claimant argues that the board erred in affirming various rulings made by the administrative judge before and during the hearing. Her claims fall primarily into two categories. First, she complains of the defendants' alleged failure to give proper notice of the factual basis for their defenses, the content of their expert's expected testimony, and the content of Clement's testimony at the hearing. Second, she argues that the administrative judge erred in allowing both the insurer's expert, Johnson, and her expert, Richman, to testify to opinions not based on their relevant expertise or not disclosed in the prehearing conference materials. While some of Johnson's testimony was admittedly unorthodox,

---

[11]Mello testified that although he had had to replace the screws in the driver's side latch in the past, he had looked at the passenger door one month prior to the accident and was not aware of any problems with the latch mechanism. Although Clement knew that the latch plate was missing one of its three screws the night before the accident, he testified that it was capable of latching securely in that condition, a conclusion supported by the claimant's expert.

[12]Given the administrative judge's well-founded findings of lack of culpable knowledge on the part of Clement and Mello, and lack of supervisory status on the part of Clement, her finding that the employee was ejected through the window is not essential to her denial of § 28 benefits.

the administrative judge's rulings on all these issues were within her sound discretion under G. L. c. 152, § 11, and the board did not err in affirming them.[13] Moreover, we have determined that the administrative judge properly found no serious and wilful misconduct on the part of the employer or a supervisor, and we have noted that her conclusion that the door did not open as a result of a faulty latch is supportable based on Robitaille's and Richman's testimony alone. Therefore, any error in these rulings — most of which relate to Johnson's testimony and nearly all of which relate to the judge's conclusion that the employee was ejected through the window — would be harmless. See *Indrisano's Case*, 307 Mass. 520, 523 (1940) ("a decree in a workmen's compensation case will not be reversed for error in the admission or exclusion of evidence, unless substantial justice requires reversal").

5. *Conclusion.* The board properly affirmed the administrative judge's decision concluding that § 7A does not create prima facie evidence of the requirements for a claim for double compensation under § 28, and that the claimant failed to establish an entitlement to § 28 benefits in this case. We therefore affirm the decision of the reviewing board.

*So ordered.*

---

[13]The unifying theme underlying most of these objections appears to be the claimant's counsel's impression that he was unfairly "ambushed" at the hearing by a change or clarification in Clement's description of the accident to the effect that he did not see the door actually come open, which prompted Johnson to advance the theory that the employee was ejected through the window. However, the claimant's counsel brought out in his direct examination of Clement that Clement was not represented by either the insurer's or the employer's counsel. Moreover, the claimant's counsel did not request a continuance when confronted with Clement's testimony, and in fact had six months between Clement's testimony on the first day of the hearing and the close of evidence on the fourth day, in which to revise his trial strategy if necessary.