## Linda Hammond's Case.

No. 04-P-1040.

Suffolk. October 12, 2004. - December 16, 2004.

Present: Laurence, Brown, & Cowin, JJ.

*Workers' Compensation Act,* Recreational activities.

This court concluded that an employee was engaged in a "purely voluntary" recreational activity within the meaning of G. L. c. 152, § 1(7A), when she was injured while she was skiing during the course of a business trip, and that she was therefore barred from receiving workers' compensation for the injury, where there was no evidence that her employer had objectively compelled or coerced her to ski as part of her employment. [686-688]

Appeal from a decision of the Industrial Accident Reviewing Board.

*Pamela G. Smith* for the employer.

*Paul M. Moretti* for the employee.

Brown, J. The issue before the Department of Industrial Accidents and this court is whether the employee was engaged in a "purely voluntary" recreational activity when she was injured while skiing on March 13, 1999. The reviewing board summarily affirmed an administrative judge's determination that the employee was not engaged in a purely voluntary recreational activity and thus was entitled to a closed period of temporary total incapacity and medical benefits stemming from injuries she sustained in the skiing accident. G. L. c. 152, §§ 1(7A), 13, 30, 34. The employer sought judicial review. Because the administrative judge erred as matter of law in concluding that the employee was not barred from receiving compensation for her injury, the decision of the reviewing board must be reversed.

The following relevant facts may be summarized from the administrative judge's decision. The employer, Millennium

Events Corporation, coordinates cultural, social, and recreational events for client companies. At all times relevant to this action, it employed the employee as an event coordinator. In January of 1999, the employee became the sole event coordinator for an employee appreciation program that was instituted by one of the employer's client companies. In that role, she coordinated various events for the program, including a weekend ski trip to Stowe, Vermont, for the client's employees. As the event coordinator of the Stowe trip, the employee obtained and distributed ski lift tickets, coordinated matters with the hotel, provided snacks and movies for the bus ride to Stowe, responded to the needs of the client's employees, arranged transportation from the hotel to the ski area (mountain), and arranged a bus tour of Stowe. Although the employee accompanied the client's employees on the trip, she did not accompany them to the mountain when they went skiing.

After returning from the trip, the employee met with the president of the employer, Gregg Nourjian. Nourjian asked the employee how the skiing went and seemed very surprised when she responded that she had not skied.[1] He also asked the employee whether she had at least accompanied the skiers to the mountain and voiced his surprise to her response that she had not. Nourjian then told her "that she should at least go to the mountain to make sure that all went well for the" client's employees while they were there.[2]

In March of 1999, the employee coordinated a second ski trip to Stowe as part of the client company's employee appreciation program. This time, Nourjian gave the employee permission to have a friend accompany her on the trip. On the first day of the trip, the employee accompanied the client's employees to the mountain, and after completing her task of assuring that everyone was already skiing, the employee and her friend skied,

---

[1] The employee testified, "I said [to Nourjian], 'Why would I go skiing? I have never been skiing before.' He was surprised."

[2] The employee testified that she was told "that the next time it's expected that I go to the mountain at least to show them, go to the mountain and provide them, you know, knowing where everything was," and that the reason she needed to go to the mountain with the client's employees was that "[the employer] needed representation, someone needed to be there in case something happened to one of the skiers."

had lunch together, and then resumed skiing. That afternoon, while skiing with her friend, the employee severely injured her right leg.

The administrative judge found "that the employee was not actively guiding the tour group down the mountain, nor was she directly performing the specific functions of her work while skiing." The administrative judge found that the employer absorbed the cost of the friend's ski lift ticket into the overall cost of the event, that "[t]he employer obviously wanted the employee to perform her duties but, given the nature of her job, she was also authorized to attend and enjoy the events involved along with the clients," and that "[a]lthough she was never specifically directed to attend any of the events [she organized,] . . . she reasonably felt encouraged to ski on March 13, 1999, as a result of her prior conversation with" Nourjian. The administrative judge then concluded that the employee had met her burden of proving that she had been injured in the course of her employment.

" 'Purely voluntary participation [in any recreational activity]' is noncompensable when injury occurs during the recreational activity and the employer has done nothing more than pay for the costs of that activity." *Bengtson's Case*, 34 Mass. App. Ct. 239, 245 (1993).[3] See G. L. c. 152, § 1(7A). The mere fact that the employer authorized the employee to ski while she was in Stowe by paying for her equipment and lift ticket is insufficient to carry the employee's burden. There must be an objective element of compulsion on the part of the employer in order for an employee's participation in such an activity to fall outside of the exclusion set out in G. L. c. 152, § 1(7A). See *Bengtson's Case*, 34 Mass. App. Ct. at 244. There

---

[3]In *Bengtson's Case*, 34 Mass. App. Ct. at 241-242, the employee was injured while playing on a softball team sponsored and organized by his employer. The employee testified that he "felt obligated . . . [and] pressure[d]" to play, and that his employer " 'would urge' his attendance at games." *Id.* at 242. The administrative judge "viewed the employer's conduct as constituting 'subtle coercion' and 'a reasonable compulsion' on [the employee] to participate," and found the employee was entitled to compensation. *Id.* at 243. This court affirmed the reviewing board's determination that the employee's injury was not compensable because it was the result of " 'purely voluntary participation' in a recreational activity sponsored by his employer. See G. L. c. 152, § 1(7A)." *Id.* at 240.

was no evidence in this case that the employer had objectively compelled or coerced the employee to ski.

The administrative judge found that the employee was never specifically told to go skiing and that she was never specifically directed to attend any of the events that she coordinated. In his decision, the administrative judge commented that Nourjian had explained that if he had shown any surprise when he learned that the employee had not skied while she was in Stowe, it was because he did not know anyone who did not ski. The administrative judge made no finding discrediting Nourjian's explanation, which was consistent with the employee's testimony on this issue. The record and the administrative judge's findings make clear that the employee was expected to accompany the client's employees to the mountain that day and to make herself available so that she could address any of their needs. However, standing alone, the requirement that she be present at the mountain does not suggest that her participation in the skiing was anything other than purely voluntary.[4]

The employee further argues that pursuant to this court's decision in *Frassa* v. *Caulfield*, 22 Mass. App. Ct. 105, 110, 113 (1986), the employer was responsible for any reasonable and foreseeable injury that she sustained while she was away on the business trip because she was a so-called "traveling" employee. That argument misses the mark. Indeed, in *Frassa*, we limited our analysis to the specific facts of that case, holding only that "[w]e think there is no question that during reasonable travel to and from the evening meal on the night of the accident, travel clearly impelled by the nature and conditions of the employment, [the employees] could be considered to have been acting in the course of their employment," and further commenting that it was "not necessary to determine whether

---

[4]The administrative judge's decision states, "I acknowledge Mr. Nourjian's testimony that the interests of the employer might have been better served if the employee remained available at the ski lodge to address the needs of clients as they arose, but the employee had given out her beeper number to each of the participants and by being on the mountain, she clearly was accessible to them." However, the administrative judge's finding does not show that "the employer . . . coerce[d], encourage[d], require[d], or pressure[d] the employee [to ski]." *Gateley's Case,* 415 Mass. 397, 400 (1993). "[T]he term 'voluntary' in the statute pertains to the employee's participation in the activity and not the reason [s]he remained on the premises." *Ibid.*

[the employees] could be considered to have been acting in the course of their employment at the places they visited after dinner." *Id.* at 110-111. We also did not consider the reasonableness or foreseeability of their conduct. *Id.* at 112.

In any event, because § 1(7A) "does not limit the time or place of the activity," injuries resulting from an employee's purely voluntary participation in recreational activities have been deemed by the Legislature to be outside the scope of compensability, whether performed on the employer's premises, *Gateley's Case,* 415 Mass. 397, 400 (1993), or while away on a business trip. Accordingly, the decision of the reviewing board is reversed.

*So ordered.*