## KAREN SIKORSKI'S CASE.

Suffolk. October 5, 2009. - December 11, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Workers' Compensation Act,* Injuries to which act applies, Recreational activities, Findings by administrative judge.

The reviewing board of the Department of Industrial Accidents correctly awarded the employee, a teacher who was injured in a skiing accident while serving as a chaperone for a school ski club trip, benefits for her medical expenses pursuant to G. L. c. 152, § 30, where the employee's injury arose out of and in the course of her employment, in that, even though her participation as a chaperone was voluntary, the activities involved constituted work connected to her employment [480-482]; and where the injury did not fall within the statutory exclusion for injuries resulting from voluntary participation in a recreational activity, in that the employee's responsibilities as a chaperone, though voluntarily undertaken, were an extension of her employment duties as a teacher [483-484].

In a proceeding before the reviewing board of the Department of Industrial Accidents (board), both the findings of an administrative judge and the record provided adequate support for the board's award of benefits for medical expenses. [484]

APPEAL from a decision of the Industrial Accident Reviewing Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Brian P. Barrett,* Assistant City Solicitor, for the self-insurer.

*Alan S. Pierce* for the employee.

*J. Michael Conley & Chris A. Milne,* for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

*John J. Canniff,* for Massachusetts Municipal Association, amicus curiae, submitted a brief.

COWIN, J. While serving as a chaperone for a Peabody High School (school) ski club trip, Karen Sikorski (employee), a mathematics teacher at the school, was injured in a skiing accident. She sought workers' compensation coverage for her medical expenses. Her employer, the city of Peabody (city), a self-insurer,

contends that her injury is noncompensable because it occurred while she participated voluntarily in a recreational activity. See G. L. c. 152, § 1 (7A).[1] The reviewing board of the Department of Industrial Accidents (board), in a divided decision, awarded benefits to the employee, concluding that the recreational aspect of serving as a chaperone was incidental to her duties in monitoring student safety and behavior. We affirm the board's decision because we conclude that a teacher who acts as a chaperone to students participating in a school-sponsored activity is acting in the course of her employment and is not engaged in "recreational" activity within the meaning of § 1 (7A).[2]

1. *Facts and procedural history.* We summarize the facts found by the administrative judge supplemented by uncontested evidence from the hearing he conducted. Since the late 1980's, the school has sponsored a student ski club. The ski club is officially sanctioned by the school committee of Peabody. Each year students participating in the ski club take four day-long ski trips and one overnight ski trip. An electronics teacher at the school, Mark Metropolis, receives a stipend from the city for serving as the ski club's adviser, but the city provides the ski club with no other financial support. The ski club's other expenses are covered by independent fund raising and fees paid by participating students.

Supervising the students participating in the trips requires additional chaperones besides Metropolis. Teachers serving as chaperones are not paid for their services, but the ski club pays their trip expenses. During the trips, chaperones are expected to supervise the students while they ride on the bus to and from the ski area, while they ski, and while they stay overnight in the lodge. Although no teacher can be forced to serve as a chaperone, the school administration has expected teachers to become involved with the school's extracurricular activities, and Metropolis has encouraged teachers to serve as ski club chaperones.

---

[1] G. L. c. 152, § 1 (7A) provides, in relevant part, that "any injury arising from an employee's purely voluntary participation in any recreational activity, including but not limited to athletic events, parties, and picnics," is not compensable under the workers' compensation statute, "even though the employer pays some or all of the cost thereof."

[2] We acknowledge the amicus brief in support of the employee submitted by the Massachusetts Academy of Trial Attorneys, as well as the amicus brief in support of the city submitted by the Massachusetts Municipal Association.

The employee was hired by the city's school department as a high school mathematics teacher in 1996. She enjoyed skiing and volunteered to serve as a chaperone for nearly all the ski club's trips from the date she was hired until January, 2004. On January 24, 2004, while acting as a chaperone for one of the ski club's trips, the employee skied with Metropolis, other chaperones, and students who attended the school. While skiing, she fell and injured her shoulder. Her injury required two surgeries and a physical therapy regimen.

The employee filed a claim for medical benefits under the workers' compensation statute. See G. L. c. 152, § 30. The city contended that it was not liable. At a conference conducted pursuant to G. L. c. 152, § 10A (1), an administrative judge denied the employee's claim. A hearing was then conducted before a different administrative judge, and the employee's claim was again denied.[3] The second administrative judge held that the employee's injury was not covered because it occurred during the employee's "purely voluntary participation in [a] recreational activity." G. L. c. 152, § 1 (7A). The employee appealed to the board, which, in a divided decision, reversed the administrative judge and awarded benefits. A majority of the board held that even though the employee's participation as a chaperone was purely voluntary, she was entitled to receive benefits because the recreational aspect of serving as a chaperone was incidental to its work-related components. The city appealed, and we transferred the case here on our own motion.

2. *Standard of review.* An aggrieved party may seek judicial review of a decision of the board regarding workers' compensation benefits. G. L. c. 152, § 12 (2). We review the board's decision in accordance with the standards set forth in G. L. c. 30A, § 14 (7) (*a*)-(*d*), (*f*), and (*g*). *Scheffler's Case*, 419 Mass. 251, 257-258 (1994). This court may reverse or modify the board's decision when it is "[i]n violation of constitutional provisions," "[i]n excess of the statutory authority or jurisdiction of the agency," "[b]ased upon an error of law," "[m]ade upon

---

[3]Any party aggrieved by an administrative judge's initial benefits decision may appeal for a hearing. G. L. c. 152, § 10A (3). In this case the hearing was scheduled to take place before the administrative judge who entered the initial order, but he was reassigned to a different office, and a new judge conducted the hearing.

unlawful procedure," "[u]nwarranted by facts found . . . where the court is constitutionally required to make independent findings of fact," or is "[a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." G. L. c. 30A, § 14 (7) (*a*)-(*d*), (*f*), (*g*). In this case we must determine whether the board correctly applied the workers' compensation statute and whether the board's decision was arbitrary or capricious. See *Scheffler's Case, supra* at 258. The board, as the agency charged with administering the workers' compensation law, is entitled to substantial deference in its reasonable interpretation of the statute. *Gateley's Case*, 415 Mass. 397, 399 (1993).

3. *Discussion.* The city argues that the employee is statutorily barred from receiving workers' compensation benefits because her injury occurred during her voluntary participation in a recreational activity, skiing. See G. L. c. 152, § 1 (7A). It contends that the board, once it accepted the administrative judge's finding that the employee participated in the ski trip voluntarily, should have denied the claim rather than analyze how closely the activity of chaperoning students on the ski trip was connected to her duties as a teacher. In determining whether the employee is entitled to benefits, we examine first whether the employee suffered "a personal injury arising out of and in the course of [her] employment." G. L. c. 152, § 26. If the first question is answered affirmatively, we evaluate whether the employee's injury is excluded from compensation as purely voluntary participation in recreational activity. See G. L. c. 152, § 1 (7A). Because we conclude that the employee's injury arose out of and in the course of her employment and does not fall within the § 1 (7A) exclusion, we hold that the board properly awarded benefits.

a. *Compensability.* A personal injury is compensable in workers' compensation when it "aris[es] out of and in the course of . . . employment." G. L. c. 152, § 26. Historically, in determining whether injuries sustained during an employee's recreation fit within this definition of compensability, this court has applied the five-factor test set forth in *Moore's Case*, 330 Mass. 1, 4-5 (1953). Under this test, we weigh the customary nature of the activity, the employer's encouragement or subsidization of the activity, the extent to which the employer managed or directed the activity, the presence of pressure or compulsion to participate,

and the employer's expected or actual benefit from the employee's participation. *Id.* The five factors are not exclusive, and the weight of each factor may vary from case to case. *Id.* at 5.

In 1985, the Legislature added a provision to the workers' compensation statute that excluded from workers' compensation "any injury resulting from an employee's purely voluntary participation in any recreational activity, including but not limited to athletic events, parties, and picnics, even though the employer pays some or all of the cost thereof." G. L. c. 152, § 1 (7A), inserted by St. 1985, c. 572, § 11. Despite the amendment, the test set forth in *Moore's Case* remains authoritative for the purpose of determining whether an injury arises out of and in the course of a worker's employment. See *Bengtson's Case*, 34 Mass. App. Ct. 239, 246 (1993). After the amendment, for an injury to be compensable, it must both arise in the "course of employment," see G. L. c. 152, § 26, and not result from voluntary participation in a recreational activity, see G. L. c. 152, § 1 (7A). The amendment neither removes the need for the course of employment analysis nor contains language prescribing new standards for conducting that analysis. The test from *Moore's Case* was designed to determine whether an employee's injury arises out of and in the course of employment, *Moore's Case, supra* at 3-4, and its five factors remain helpful in evaluating the connection between employees' injuries and their employment.[4] Accordingly, we apply the test from *Moore's Case* to the employee's case.

Weighing these factors, it is clear that the employee's skiing as a chaperone arose out of and in the course of her employment as a teacher, even though her participation as a chaperone was voluntary. First, it was customary for teachers to serve as chaperones for the ski club's trips and to perform many of their functions as teachers while they did. The chaperones were responsible for supervising student behavior, enforcing school

[4]The Appeals Court has suggested that the 1985 amendment regarding recreational activity "replaced" the approach adopted in *Moore's Case*, 330 Mass. 1, 4-5 (1953). See *Cornetta's Case*, 68 Mass. App. Ct. 107, 115 (2007). However, this statement was dictum because the only issue presented in that case was the interpretation of an unrelated portion of G. L. c. 152, § 1 (7A), regarding mental or emotional disability. *Id.* at 113. For the reasons set forth in this opinion, we conclude that the Appeals Court was correct when it held earlier that *Moore's Case* remains authoritative. See *Bengtson's Case*, 34 Mass. App. Ct. 239, 246 (1993).

rules, and monitoring student safety.[5] These supervisory respon-
sibilities are essentially the same ones teachers must exercise
while working in the school building during school hours. In
order to fulfil these responsibilities while the students were ski-
ing, the chaperones were expected to ski with the students. Indeed,
accompanying the students on the ski slopes was the only effec-
tive way to monitor the students while they skied. Furthermore,
at the time of the employee's injury, she was skiing with the
students she was charged with monitoring, rather than skiing rec-
reationally on her own. Cf. *Hammond's Case*, 62 Mass. App. Ct.
684, 685-686 (2004).

Second, the city encouraged teachers to participate as ski
club chaperones. Both the school principal and the ski club
adviser solicited teachers to serve as chaperones.

Finally, the ski club's trips benefited the city by furthering the
school's educational mission. "Education is a broad and com-
prehensive term." *Mount Hermon Boys' Sch.* v. *Gill*, 145 Mass.
139, 146 (1887). This broad definition of education includes
school-sponsored extracurricular activities. *Missett* v. *Cardinal
Cushing High Sch.*, 43 Mass. App. Ct. 5, 10-11 (1997). The
testimony at the hearing indicated that the school's teachers and
administrators shared the belief that extracurricular activities are
an important part of the school's operations. The school com-
mittee of Peabody officially sponsored some clubs (including
the ski club), paid club advisers, and sometimes provided clubs
(other than the ski club) with operating funds. The school's
principal and teachers believed faculty involvement in student
activities to be a valuable service to the school and its students.
Thus, the city benefited from the employee's service as a ski
club chaperone.

After examining these factors, we agree with the board's con-
clusion that the duties the employee performed while participat-
ing in the ski trip arose out of and in the course of her duties as
a teacher at the school. See G. L. c. 152, § 26. Even though she
volunteered to be a chaperone, the activities involved constituted
work connected to her employment; accordingly, the injury she
suffered is compensable under § 26.

---

[5]The ski club adviser explained these expectations to the chaperones. He
also provided them with walkie-talkies to carry while skiing for use in case of
an injury to a student.

b. *G. L. c. 152, § 1 (7A), exclusion.* We next address whether the employee is nonetheless barred from receiving workers' compensation because her injury resulted from voluntary participation in a recreational activity, see G. L. c. 152, § 1 (7A), and conclude that she is not.

The amendment does not define "recreational activity," but it lists "athletic events, parties, and picnics" as nonexclusive examples of the type of recreational activity that is excluded from workers' compensation. *Id.* Serving as a chaperone on a school-sponsored ski club trip is substantially different from playing softball or attending a company picnic outside work hours. Unlike those activities, the employee's service as a chaperone substantially benefited her employer and required her to perform her regular job duties of supervising students. When playing on an athletic team or attending a social gathering, employees rarely perform any of their regular duties, and the employer receives only minor benefits from improved employee good will and morale. See *Kemp's Case*, 386 Mass. 730, 732-734 (1982). It is this type of activity that has been held noncompensable under § 1 (7A). See *Gateley's Case*, 415 Mass. 397, 400-401 (1993). In contrast, we have never held that the § 1 (7A) exclusion applies to injuries suffered while performing the employee's normal job duties at an event substantially benefiting the employer. In this case, the employee's responsibilities as a chaperone, though voluntarily undertaken, were an extension of her employment duties as a teacher, not recreation.

The city's reliance on *Hammond's Case*, 62 Mass. App. Ct. 684 (2004), is unavailing, because in that case, the employee was not performing her work duties at the time of her injury. In *Hammond's Case*, Hammond organized a ski trip for her employer's clients. Her duties included providing the clients' ski lift tickets; coordinating their transportation, hotel arrangements, snacks, and entertainment; and checking to make sure the clients' skiing "went well." *Id.* at 685. Hammond injured herself while she and a friend skied by themselves after she had finished checking in on the clients to assure they were all skiing. *Id.* at 685-686. The court held that her injury fell within the § 1 (7A) exclusion, because even though her job required her to be at the ski resort, it did not require her to ski. *Id.* at 687. In contrast, in the present case, the employee was required to be on

the ski slopes supervising the students while the students skied, and her injury occurred during her performance of that function.

For these reasons, we conclude that the Legislature, in amending G. L. c. 152, § 1 (7A), did not intend to exclude a teacher's voluntary service as a chaperone from coverage. Thus, the board was correct in reversing the administrative judge's decision that § 1 (7A) precluded a workers' compensation award.

c. *Findings of the administrative judge.* The city argues that the board's conclusions are contrary to the record and the administrative judge's findings. Although G. L. c. 152, § 12 (2), does not authorize this court to overturn a board decision on the ground that it is unsupported by substantial evidence, see *Scheffler's Case*, 419 Mass. 251, 257-258 (1994), we review the board's decision to ensure that its factual basis is sufficient to prevent it from being arbitrary or capricious. *Robinson's Case*, 416 Mass. 454, 457 (1993). We determine that the board's conclusions find adequate support in both the administrative judge's findings and the record. The judge found that the employee's duties included "being on the ski slopes throughout the day monitoring high school aged children" and that, without teacher chaperones, "no after school activities would be possible and an important part of the high school curriculum would be missing." Finally, the judge found that the employee was skiing with the ski club's students at the time of her injury.

The findings reflect accurately the testimony of the witnesses at the hearing. They form an adequate basis on which the board could conclude that the employee's duties as a chaperone were connected to her employment as a teacher; that the recreational aspect of serving as a chaperone was incidental to her employment duties; and that she was performing those employment duties at the time of her injury.

4. *Conclusion.* Because the recreational aspects of the employee's service as a ski club chaperone were subordinate to the work-related duties she performed, G. L. c. 152, § 1 (7A), does not bar her from receiving workers' compensation for her injury. Accordingly, we affirm the board's decision to award the employee medical benefits pursuant to G. L. c. 152, § 30.

*So ordered.*