NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1356                                        Appeals Court


THE HOME INSURANCE COMPANY  vs.  WORKERS' COMPENSATION TRUST
FUND.


No. 14-P-1356

Suffolk.     June 2, 2015. - September 3, 2015.

Present:  Vuono, Grainger, Blake, JJ.


Workers' Compensation Act, Reimbursement of insurer, Cost of
     living allowance.  Insurance, Insolvency of insurer.
     Practice, Civil, Standing.  Administrative Law, Agency's
     interpretation of statute.  Statute, Construction.


     Appeal from a decision of the Industrial Accident Reviewing
Board.


     Eric A. Smith (Donald E. Wallace with him) for the
plaintiff.
     Douglas S. Martland, Assistant Attorney General, for the
defendant.
     W. Frederick Uehlein & Dorothy M. Linsner, for Lumbermens
Mutual Casualty Company, amicus curiae, submitted a brief.
     Joseph C. Tanski, Gregory P. Deschenes, & Kurt M. Mullen,
for Massachusetts Insurers Insolvency Fund, amicus curiae,
submitted a brief.


     GRAINGER, J.   We are called upon to analyze certain rights

and obligations resulting from the liquidation of a New

Hampshire insurance company that issued workers' compensation

policies in Massachusetts. At issue in this appeal is the company's entitlement pursuant to G. L. c. 152, § 65(2), to reimbursement for cost of living adjustments (COLA, COLA increases), as prescribed by G. L. c. 152, § 34B, to eleven individuals receiving workers' compensation benefits. Both an administrative judge (judge) and the reviewing board (board) of the Department of Industrial Accidents (DIA) determined, albeit on different rationales, that the company was not entitled to reimbursement.

Background. The undisputed facts, excerpted below, are recounted in detail in the board's comprehensive decision.

COLA payments as part of the workers' compensation scheme. Persons receiving workers' compensation benefits in Massachusetts are entitled to receive annual COLA increases to reflect changes in the cost of living. See G. L. c. 152, § 34B. These COLA increases are funded, then subject to reimbursement, as follows: Revenues to fund the defendant Workers' Compensation Trust Fund (trust fund) are raised by an annual assessment[1] on employers pursuant to G. L. c. 152, § 65. Under normal circumstances (i.e., involving solvent insurers), the

---

[1] These assessments are determined with reference to the amount an employer paid out to satisfy workers' compensation claims for the prior twelve-month period and by projecting what proportion of the fund's budget that employer is likely to require in the current year. See G. L. c. 152, §§ 65(3) and (4)(d).

yearly assessments are collected from employers by their insurers such as the plaintiff  Home Insurance Company (Home), who transmit them to the trust fund.  The insurers then pay the COLA increases together with other monthly benefits to injured workers.  See G. L. c. 152, § 65(2).  This, in turn, entitles the insurers to reimbursement from the trust fund for the COLA payments on a quarterly basis.  Ibid.

Home's conduct of business and eventual withdrawal from the Commonwealth.  Home, a New Hampshire Corporation since 1973 now in liquidation (the estate), was licensed to issue workers' compensation insurance policies in Massachusetts.  As a foreign insurer issuing policies in Massachusetts, Home was required to provide a bond to the Commonwealth securing any obligations that might be outstanding upon its withdrawal from the state that it would not otherwise be able to satisfy (the insolvency bond).  See G. L. c. 152, §§ 61 and 62.[2]  As an additional condition of doing business in Massachusetts, Home was required to deposit funds "with the state treasurer . . . in exclusive trust for the benefit and security of its policyholders in an amount satisfactory to the [Massachusetts] [C]ommissioner [of

---

[2] The bond is required, by its terms, to secure the obligations relating to the deposit of funds by a foreign insurance company at the time it withdraws from the transaction of business in the Commonwealth.  See G. L. c. 152, § 62.

Insurance]" (insolvency fund). G. L. c. 175, § 151, as inserted by St. 1993, c. 226, § 46.

In June of 1995, the New Hampshire Commissioner of Insurance became concerned about Home's solvency and ordered the company to stop issuing policies. Home was placed into rehabilitation, also referred to as a "run-off" period, whereby it could not issue new policies but continued to administer existing policies.[3] The run-off period ended in June of 2003, when Home was placed into liquidation.

The COLA reimbursement process outlined above was not followed during the run-off period. As of June, 1995, Home was no longer writing policies and had stopped collecting assessments from employers, even while it continued paying benefits, including COLA, to injured workers under existing policies.

When Home was liquidated in 2003, its estate was ordered to cancel existing policies. Consequently, the Massachusetts Insurers Insolvency Fund (MIIF) became obligated to pay valid outstanding claims arising from any policies Home had previously issued in Massachusetts, including workers' compensation

---

[3] As of December, 1995, Home's business essentially consisted of managing, adjusting, and administering claims made against previously existing policies.

policies. See G. L. c. 175D, § 5(1)(a) and (b). These claims included COLA.

MIIF paid outstanding Home claims from the insolvency fund it administers pursuant to G. L. c. 175D, § 5(1)(c). After making these payments, MIIF sought reimbursement from the estate's liquidator in New Hampshire. The liquidator, in turn, authorized MIIF to apply the proceeds of the aforementioned insolvency bond paid by Home to the Commonwealth. See G. L. c. 152, § 61.[4] Accordingly, MIIF received reimbursement for its payments to workers directly from the insolvency bond proceeds until those proceeds were exhausted. Once the bond proceeds were exhausted, MIIF became one of the unsecured creditors of the estate and could no longer rely on reimbursement in full.

Administrative proceedings. In 2008, the former principals of Home, purporting to represent the company, initiated administrative proceedings in the DIA for reimbursement of COLA payments made to injured workers both during the run-off period and after the company was placed into liquidation. The administrative judge determined that the company lacked standing

---

[4] The liquidator reimbursed MIIF directly from the estate for the administrative costs associated with the payment of claims; the claims themselves were reimbursed after the liquidator authorized the Massachusetts Commissioner of Insurance, designated as the estate's ancillary receiver, to petition the Supreme Judicial Court for permission to receive reimbursement from the insolvency bond created pursuant to § 62.

to apply for reimbursement of payments it had made during either period.

The board affirmed the judge's ruling that the company lacked standing to apply for reimbursement of payments made after liquidation. The board reversed the judge's determination with respect to standing during the run-off period, and ruled that Home did enjoy standing to apply for reimbursement of payments made during that time. However, with respect to the merits, the board ruled that while the company had standing to assert the claim, it nevertheless would not be entitled to reimbursement for run-off period payments.

Discussion. As stated, Home's standing to seek reimbursement for COLA payments is disputed by the parties with respect to two different periods of time. The more straightforward question, relating to standing after the company was placed into liquidation in 2003, need not detain us. We agree with both the judge and the board that the commencement of liquidation proceedings deprived Home of standing.

Home's claim of postliquidation standing is based on its assertion that it enjoys a property interest in the insolvency bond. The first flaw in this approach is the fact that the bond fund's proceeds are depleted. In response, Home asserts that the reimbursements it seeks would be applied to replenish the bond fund. That assertion, however, founders on the board's

ruling, discussed infra, that Home's failure to collect assessments during the run-off period is fatal to its claim for reimbursement. As Home is not entitled to reimbursement with which to replenish the fund, its argument that it has a property interest in the nonexistent contents of the fund cannot succeed.

Finally we note that, even if Home were entitled to reimbursement, any resulting proceeds would not inure to the benefit of the bond fund. Under the provisions of G. L. c. 175, § 180E, the insurance commissioner, as ancillary receiver, "shall, as soon as practicable, liquidate from their respective securities such special deposit claims and secured claims as are approved and allowed in the ancillary proceedings in this commonwealth, and, under the orders of the court, shall pay from the assets in his hands as receiver the necessary costs and expenses of such proceedings, including compensation, and shall transfer all remaining assets to the domiciliary receiver." Thus, if Home were able to obtain any funds for reimbursement, any surplus not expended for administrative costs or benefits would simply be paid from the bond fund to the New Hampshire estate.

With respect to the run-off period, the board conditioned Home's standing to claim any reimbursement for COLA payments on its transmittal to the trust fund of assessments collected from

employers.[5]  The board reasoned that the "pay as you go" concept underlying the workers' compensation scheme makes the collection and transmittal of assessments an integral part of the reimbursement process.  The board emphasized, notwithstanding the fact that Home's COLA payments to injured workers provided at least a facial basis for it to claim reimbursement, that collection and transmittal of assessments provide the underlying funding for reimbursement.  Accordingly, it determined that noncontributors of assessments cannot claim reimbursement.

The board's ruling falls within its area of expertise and within the authority delegated by the legislature.  Consequently, the board's interpretation of G. L. c. 152, § 65, that Home is not entitled to COLA reimbursements from the trust fund deserves deference.  See generally Molly A. v. Commissioner of the Dept. of Mental Retardation, 69 Mass. App. Ct. 267, 280 (2007).  Our deference is especially warranted in a situation, as here, where the board has chosen between "two equally plausible readings of the statutory language."  Falmouth v. Civil Serv. Commn., 447 Mass. 814, 821 (2006).[6]

---

[5] The board initially ordered a remand to the administrative judge for a factual determination whether any such assessments had occurred.  Home, however, thereafter stipulated that it had not collected any such assessments, successfully requested a final decision from the board, and has now appealed.

[6] In this context, the trust fund makes a separate argument, asserting that standing to claim reimbursement for COLA payments

Accordingly we discern no error in the board's rulings with respect to either the run-off or the liquidation periods.

                                    <u>Decision of reviewing</u>
                                      <u>board affirmed</u>.

---

under the statute requires a party to qualify as an "insurer." G. L. c. 152, § 34B(<u>c</u>) ("<u>Insurers</u> shall be entitled to quarterly reimbursement . . .") (emphasis supplied).  The trust fund contends that Home did not qualify as an insurer because it could not issue new policies during the run-off period so it did not meet the statutory definition of "[a]ny insurance company . . . <u>authorized to do so</u>, which has contracted with an employer to pay the [workers'] compensation provided for by this chapter" (emphasis added).  G. L. c. 152, § 1(7), as appearing in St. 1991, c. 398, § 85.  The board did not address this argument; we find it unnecessary as well to the resolution of the appeal and note that we consider it an appropriate subject for the board under the doctrine of primary jurisdiction.  See <u>Lumbermens Mut.</u> <u>Cas. Co</u>. v. <u>Workers' Compensation Trust Fund</u>, 88 Mass. App. Ct. ,    (2015).