NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

23-P-699                                            Appeals Court

ARROWOOD INDEMNITY COMPANY  vs.  WORKERS' COMPENSATION TRUST FUND.

No. 23-P-699.

Suffolk.     March 5, 2024. - July 11, 2024.

Present:  Green, C.J., Henry, & Ditkoff, JJ.

Workers' Compensation Act, Reimbursement of insurer, Decision of Industrial Accident Reviewing Board.  Department of Industrial Accidents.  Insurance, Workers' compensation insurance.  Administrative Law, Agency's interpretation of statute.  Statute, Construction.

Appeal from a decision of the Industrial Accident Reviewing Board.

Eric A. Smith for the plaintiff.
Douglas S. Martland, Assistant Attorney General, for the defendant.

GREEN, C.J.  This appeal concerns the Workers' Compensation Trust Fund (trust fund), a statutorily created entity that reimburses insurers for certain workers' compensation benefits, including a portion of the benefits paid to previously injured employees who suffer further work-related injuries.  See G. L.

c. 152, § 37; Shelby Mut. Ins. Co. v. Commonwealth, 420 Mass. 251, 252 (1995). See also G. L. c. 152, § 65 (2) (listing other types of reimbursements). Revenues for the trust fund come from assessments on employers that are collected by their insurers, calculated on the basis of premiums collected from those employers. See G. L. c. 152, § 65 (2), (5). However, the statute allows certain employers to opt out of the assessments, for example by self-insuring and filing a notice of nonparticipation. See id. In their capacities as insurers, these employers are ineligible for reimbursement. See id. See also G. L. c. 152, §§ 34B (c), 37.

In Home Ins. Co. v. Workers' Compensation Trust Fund, 88 Mass. App. Ct. 189, 193 (2015) (Home), we held that the reviewing board of the Department of Industrial Accidents (reviewing board) had reasonably concluded that the bar on receiving reimbursements also applied to an insurance company that did not have any assessments to collect. This appeal asks us to revisit our decision in Home. We agree that we should do so, as the statute's plain language does not support the reviewing board's interpretation.

Background. Roque Pena worked for Scully Signal Company (Scully). In October 1994, he sustained an initial back injury in the course of his employment. Despite receiving treatment, he continued to suffer from chronic back pain. In January 2001,

Pena sustained a second back injury that rendered him unable to return to substantial gainful employment.  The combined effects of the initial injury and the second injury resulted in a substantially greater disability than that which would have resulted from the second injury alone.  Following Pena's second injury, Scully's insurer, Arrowood Indemnity Company (Arrowood),[1] commenced paying workers' compensation benefits to him.

In 2003, Arrowood stopped issuing new policies in Massachusetts.  Because the amount of an employer's assessment is calculated on the basis of the employer's premium, see G. L. c. 152, § 65 (5),[2] once Arrowood did not have any premiums to collect, it also did not have any assessments to collect.  However, Arrowood has continued to service claims under previously issued policies, and has continued to pay workers' compensation benefits to Pena.  That is to say, Arrowood is in a "run-off period," a period during which an insurance company

---

[1] As a technical matter, Scully's insurer at the time was a predecessor to Arrowood.  Where the distinction between the Arrowood and any of its predecessors is immaterial to our analysis, we refer to them all interchangeably as Arrowood.

[2] "For each insured employer, the assessment shall be equal to the product of its standard workers' compensation premium and the assessment rate determined pursuant to subsection (4), multiplied by the ratio of the aggregate base amount for all insured employers as reported pursuant to subsection (3), to the aggregate written estimated premium for these said employers for the next twelve-month period beginning January first and ending on the last day of December."  G. L. c. 152, § 65 (5).

stops issuing new policies but continues to administer and pay claims under previously issued policies.

Throughout the time that Arrowood has paid workers' compensation benefits to Pena, it has requested second-injury reimbursements from the trust fund. For a time, the trust fund approved those requests. Then, in 2014, the reviewing board decided another case involving an insurance company in a run-off period. The reviewing board concluded that the insurance company became ineligible for reimbursement "once it ceased collecting assessments," and we upheld that decision in Home, 88 Mass. App. Ct. at 193.[3] Following the reviewing board's decision, the trust fund applied the same rationale to Arrowood and began to deny Arrowood's requests for reimbursement. Arrowood filed an administrative appeal with the Department of Industrial Accidents. An administrative judge concluded that Arrowood was ineligible for reimbursement, and the reviewing board affirmed that decision. Arrowood's appeal to this court followed.

Discussion. "[T]he interpretation of a statute is a matter for the courts." Onex Communications Corp. v. Commissioner of Revenue, 457 Mass. 419, 424 (2010). "The [reviewing] board, as

---

[3] We note that, while the case before us involves second-injury reimbursements, Home, 88 Mass. App. Ct. at 190, involved cost of living adjustment (COLA) reimbursements. Nothing in our decision turns on this difference.

the agency charged with administering the workers' compensation law, is entitled to substantial deference in its reasonable interpretation of the statute." Sikorski's Case, 455 Mass. 477, 480 (2009). However, "principles of deference . . . are not principles of abdication" (citation omitted). Shrine of Our Lady of La Salette Inc. v. Assessors of Attleboro, 476 Mass. 690, 696 (2017). "If an agency interpretation were to collide with the plain meaning of a statute, the agency view would have to give way." Anheuser-Busch, Inc. v. Alcoholic Beverages Control Comm'n, 75 Mass. App. Ct. 203, 209 (2009).

In its 2014 decision underlying our decision in Home, the reviewing board stated that there was no material difference between (1) an insurance company that, as a result of being in a run-off period, did not have any premiums or assessments to collect and (2) employers that choose not to pay the assessments. According to the reviewing board, "the end result was the same" because the insurance company did not participate in the assessment provisions. The reviewing board concluded that, because the assessments provide the revenues for the trust fund, the insurance company was ineligible for reimbursement. In affirming that decision, we deferred to the reviewing board's decision that the insurance company's "failure to collect assessments" was "fatal to its claim for reimbursement." Home, 88 Mass. App. Ct. at 192.

We must revisit our decision in Home because there is a critical difference between the roles that employers and insurers play with respect to the trust fund, both as a matter of practical effect in the administration of the trust fund and, more importantly, as described in the statutory language governing the trust fund's administration.  As we explain in more detail below, employers pay the assessments that provide the revenues for the trust fund, while insurers merely transmit those payments to the trust fund.  See G. L. c. 152, § 65 (2), (5).  When an employer chooses not to pay the assessments, that deprives the trust fund of revenues; when an insurance company enters a run-off period and no longer has any premiums or assessments to collect, that does not deprive the trust fund of revenues.  By its own terms, the statutory exception to reimbursement applies only to employers that choose not to pay the assessments.  See G. L. c. 152, § 65 (2).  See also G. L. c. 152, §§ 34B (c), 37.  Neither the language of the exception nor the logic behind it applies to an insurance company that, as a result of being in a run-off period, does not have any premiums or assessments to collect.

Prior to December 1991, all employers were required to participate in the trust fund.  See Markos-Waiswilos v. Salem Hosp., 67 Mass. App. Ct. 904, 904 (2006).  That month, the

Legislature amended G. L. c. 152, § 65 (2).  See St. 1991,

c. 398, § 85.  As the statute now reads,

> "No private employer with a license to self-insure and no
> private self-insurance group[4] shall be required to pay
> assessments . . . and neither the commonwealth, nor any
> city, town, or other political subdivision of the
> commonwealth or public employer self-insurance group shall
> be required to pay assessments . . . if such employer or
> group has given up an entitlement to reimbursement . . . by
> filing a notice of non-participation with the department."

G. L. c. 152, § 65 (2).  However, the Legislature made further

amendments to the statute so that choosing not to pay the

assessments "comes at a price."  Markos-Waiswilos, supra.  As

noted, employers that choose not to pay the assessments into the

trust fund, for example by self-insuring and filing a notice of

nonparticipation, are ineligible for reimbursement from the

trust fund.  See G. L. c. 152, § 65 (2).  See also G. L. c. 152,

§§ 34B (c), 37.

This narrow exception to reimbursement is plainly stated in

three different places.  Pursuant to G. L. c. 152, § 65 (2), no

reimbursements shall be made "to any non-insuring public

employer, self-insurer or self-insurance group which has chosen

not to participate in the fund as hereinafter provided."  While

the statute refers to "self-insurer[s]" and "self-insurance

---

[4] As we explain, infra, self-insurance groups are groups of
employers that have entered into agreements to pool their
liabilities for workers' compensation benefits.  See G. L.
c. 152, § 25E.

group[s]," self-insurers are simply employers that have obtained a license to self-insure, see G. L. c. 152, § 25A (2), and self-insurance groups are simply groups of employers that have entered into agreements to pool their liabilities for workers' compensation benefits, see G. L. c. 152, § 25E.  Similarly, G. L. c. 152, § 34B (c), provides that "[n]o self-insurer, self-insurance group or municipality that has chosen non-participation in the assessment provisions for funding [COLA] reimbursements pursuant to section sixty-five shall be entitled to [COLA] reimbursements."  General Laws c. 152, § 37, provides that insurers shall receive second-injury reimbursements unless the insurer is "a self-insurer, a group self-insurer or municipality that has chosen not to be subject to the assessments which fund said reimbursements."

In contrast, the statute does not contain language prohibiting insurance companies that are in run-off periods from receiving reimbursements.  Under the plain and clear terms of the statute, an insurance company in a run-off period is neither a "non-insuring public employer, self-insurer [n]or self-insurance group which has chosen not to participate in the fund as hereinafter provided."  G. L. c. 152, § 65 (2).  Accordingly, such insurers are not within the category of those excluded by the statute from reimbursement.

Moreover, an insurance company in a run-off period stands on different footing than an employer that chooses not to pay the assessments. Taking Arrowood as an example, Arrowood issued policies to employers that contributed to the trust fund. For as long as Arrowood collected premiums from those employers, it also collected the corresponding assessments. When Arrowood stopped issuing new policies, its insured employers were required to obtain policies with new insurers and pay the corresponding assessments to their new insurers. Scully, for example, obtained a new policy from and began paying assessments to OneBeacon Insurance Company. In other words, Arrowood's actions did not deprive the trust fund of any revenues, and the logic behind the narrow exception to reimbursement does not apply to Arrowood.

The reviewing board's interpretation, though entitled to deference, is unsupported by either the plain language of the statute or the legislative intent evident in that language. In such circumstances, it is the legislative intent, and the statutory language, that control. See Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 604 (2019). We also note that public policy considerations support allowing insurance companies that are in run-off periods to receive reimbursements. The purpose of the second-injury reimbursements is to encourage employers to hire persons with

disabilities. See Shelby Mut. Ins. Co., 420 Mass. at 252. The incentive works as follows. While the reimbursements go to the insurer, the reimbursements reduce the amount of the loss and improve the employer's experience modification factor, which is used in determining the employer's premium. As a result, the employer's premium is reduced. See G. L. c. 152, § 53A (4). See also, e.g., Deerfield Plastics Co. v. Hartford Ins. Co., 404 Mass. 484, 488 (1989). An employer that has contributed to the trust fund should be able to receive this benefit, even if its insurer has stopped issuing new policies and therefore does not have any premiums or assessments to collect.

In sum, insurers are eligible for reimbursement "so long as the insured employer participates in the assessment provisions that supply the revenues for the [trust f]und." Beatty's Case, 84 Mass. App. Ct. 565, 566 (2013). Because the insured employer here, Scully, participated in those assessment provisions, Arrowood is eligible for reimbursement.

In revisiting our decision in Home, we are mindful of the principles of stare decisis and the many reasons that our preferred course is to adhere to precedent. See Shiel v. Rowell, 480 Mass. 106, 108-109 (2018). However, the principle "is not absolute. No court is infallible, and this court is not barred from departing from previous pronouncements if the benefits of so doing outweigh the values underlying stare

decisis."  Stonehill College v. Massachusetts Comm'n Against Discrimination, 441 Mass. 549, 562, cert. denied sub nom. Wilfert Bros. Realty Co. v. Massachusetts Comm'n Against Discrimination, 543 U.S. 979 (2004).  Our decision in Home focused on an insurance company's standing to seek reimbursement for COLA payments during the run-off period both before and after the company was placed into liquidation proceedings.  In retrospect, we accorded too much deference to the reviewing board's decision, at the expense of the language of the statute. Because the statute's plain language does not support the reviewing board's interpretation, we must depart from our pronouncement in Home and now reverse the decision of the reviewing board.

So ordered.